IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
COUNTY CIVIL DIVISION

MARTHA HALL,

    Plaintiff,

vs.

W.S. BADCOCK CORPORATION,

    Defendant.

_____/

Case No.: 10-CC-026806

Division: L

RECEIPT OF FILING

NOV 0 1 20

CLERK OF CIRCUIT COURT

## DEFENDANT W.S. BADCOCK CORPORATION'S
## MOTION TO STAY CASE AND COMPEL ARBITRATION

Defendant, W.S. Badcock Corporation ("Badcock"), by and through the undersigned counsel, and pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., moves this Court for the entry of an Order staying this action and compelling arbitration. In support thereof, Badcock states as follows:

1. This action was commenced when plaintiff, Martha Hall ("Plaintiff"), filed a complaint in this Court on or about October 1, 2010 against Badcock (the "Complaint").

2. The Complaint contains forty-five repetitive paragraphs separated into two causes of action against Badcock.

3. In the first count, Plaintiff alleges that, in the process of collecting an alleged consumer debt from her, Badcock violated Florida's Consumer Collections Practices Act, Fla. Stat. § 559.55, et seq. ("FCCPA"). Specifically, Plaintiff alleges a violation of Fla. Stat. § 559.72(7) for "willfully engaging in conduct expected to" harass or abuse Plaintiff.

4. In the second count, Plaintiff alleges a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). In particular, Plaintiff alleges a violation of

TPADOCS 18784923 1


EXHIBIT "B"

47 U.S.C. § 227(b)(1)(B)(iii) for placing non-emergency telephone calls to Plaintiff's telephone without prior express consent.

5. The two counts set forth in the Complaint arise out of Badcock's servicing of revolving credit account opened by Plaintiff pursuant to a Badcock Easy Purchase Plan Credit Agreement, dated April 17, 2008, executed by Plaintiff and Ida Mae Kelly, in favor of Badcock (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit "A."

6. The gravamen of the Complaint is Plaintiff's allegation that Badcock harassed Plaintiff through its method of collecting a debt as Badcock was allegedly not provided prior express consent by Plaintiff to contact her cellular telephone, in contravention of the FCCPA and TCPA. These statutory cause of actions, which arise out of and relate to the Agreement, should be decided in arbitration, in accordance with the Agreement's binding agreement to arbitrate, which Badcock invokes herein.

7. Under both federal statutory provisions and state law, a court must consider three elements in ruling on a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived. Reeves v. Ace Cash Express, 937 So. 2d 1136, 1137 (Fla. 2d DCA 2006); Maguire v. King, 917 So. 2d 263, 265-66 (Fla. 5th DCA 2005).

8. First, there must be a valid agreement to arbitrate. Under the Agreement, which gave rise to the servicing obligation, the parties agreed that all disputes where the aggregate amount at issue exceeds $7,500 would be resolved by binding arbitration governed by the Federal Arbitration Act, 9 U.S.C. §1, et seq. (the "FAA"). The arbitration clause provides in part:

> ARBITRATION. You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between us and you (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.

(the "Arbitration Clause"). Thus, a valid agreement to arbitrate under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. exists between the parties.

9. Second, an arbitrable issue exists. The Arbitration Clause in the Agreement is extremely broad and covers all claims including "any and all claims or controversies arising out of or related to any aspect of the relationship between us and you." The Complaint's allegations of violations of the FCCPA and TCPA arise out of the servicing of the revolving credit account that was created pursuant to and evidenced by the Agreement. Therefore, this action arises from and relates to the Agreement and the relationships and dealings which result from the Agreement. Indeed, the FCCPA defines "debtor" or "consumer" as "any natural person obligated or allegedly obligated to pay any debt." Fla. Stat. § 559.55(2). Standing to assert a cause of action under the FCCPA is provided to the person liable for the debt on the Agreement which creates the servicing obligation and contains the Arbitration Clause. Thus, Plaintiff's standing is derived from her status under the Agreement, preventing her from claiming that the cause of action is not related to the Agreement.

10. Moreover, Plaintiff's claim under the FCCPA is a state statutory claim which is appropriate for arbitration. In Reeves, the Second District affirmed an order compelling the arbitration of a debtor's FCCPA claim. 937 So. 2d at 1137-38. The Second District specifically held that FCCPA claims are not excluded from arbitration as a matter of law, and rejected the notion that FCCPA claims are somehow distinct from and excluded from a contract's arbitration

provision because of public policy. Id.; see also Taylor v. Green Tree Financial Servicing Corp., 260 B.R. 548 (Bankr. M.D. Fla. 2000) (court finding a similar arbitration clause valid and enforceable in a bankruptcy proceeding where plaintiff was seeking to enforce substantive statutory rights under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq. ("FDCPA").[1]

11. Finally, the right to arbitration has not been waived where Badcock has not acted in any manner inconsistent with its right to arbitrate.

12. It is well-settled that public policy favors arbitration of disputes "because it is efficient and avoids the time delay and expense associated with litigation." Regency Group, Inc. v. McDaniels, 647 So. 2d 192, 193 (Fla. 1st DCA 1994). Thus, when a court must decide whether a particular dispute is subject to arbitration, all doubts about the scope of the agreement should be resolved in favor of arbitration. Id.; see also The Hillier Group, Inc. v. Torcon, Inc., 932 So. 2d 449, 453 (Fla. 2d DCA 2006) (recognizing Florida's strong public policy in favor of arbitration).

13. Based on the foregoing, including the binding precedent of Reeves v. Ace Cash Express, Inc., 937 So. 2d 1136 (Fla. 2d DCA 2006), the stay of this case and referral of this cause to arbitration are appropriate and justified under the law.

WHEREFORE, Defendant, W.S. Badcock Corporation, respectfully requests that this Court issue an Order staying this action, including discovery, and referring this matter to arbitration, as well as any other and further relief as is just and proper.

---

[1] The FCCPA gives due consideration and great weight to interpretations of the federal courts with reference to the FDCPA. Fla. Stat. § 55.77(5). As such, the Florida Consumer Collection Practices Act should be construed in the same manner as the FDCPA.

Respectfully submitted,

*[signature]*

JOHN E. JOHNSON
Florida Bar No. 593000
RYAN C. REINERT
Florida Bar No. 0081989
SHUTTS & BOWEN LLP
100 S. Ashley Drive, Suite 1500
Tampa, FL 33602
Telephone:   (813) 229-8900
Facsimile:   (813) 229-8901
Email:       jjohnson@shutts.com
             rreinert@shutts.com
*Attorneys for W.S. Badcock Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been sent this 1st day of November, 2010, via U.S. mail and facsimile to James S. Giardina, Esq., The Consumer Rights Law Group, 3802 W Bay to Bay Blvd., Suite 11, Tampa, Florida 33629, (866) 535-7199 (facsimile).

*[signature]*
Attorney

02/03/2010  12:49   813-626-8726           TAMPA EAST                    PAGE  01

**TP-39399068**   CREDIT APPLICATION AND AGREEMENT

Type of Application (Check One): ☐ Individual ☐ Joint

### 1. APPLICANT — Incomplete form may result in decline of your credit

APPLICANT'S NAME (FIRST, MIDDLE, LAST): Ida Mae Kelly

STREET ADDRESS: 301 E. Clinton St, Tampa FL 33604

CITY: Tampa  STATE: FL  ZIP CODE: 33604

EMPLOYER: None

POSITION: 

INCOME: $

APPLICANT: ☒ RENTS  ☐ OWNS/BUYING   MONTHLY PAYMENT: $300

### 2. CO-APPLICANT

CO-APPLICANT'S NAME: Martha L. Hill

STREET ADDRESS: 301 East Clinton St, Fl 33404

HOME PHONE: 813-964-6104

CITY: Tampa

EMPLOYER: —  POSITION: Disabled

HOW LONG: 2 yrs 5 mos

INCOME: $1,675 mo

APPLICANT: ☐ RENTS  ☒ OWNS/BUYING   MONTHLY PAYMENT: $1200

Mortgagee/Landlord Phone #: 512-233-5000

### 3. APPLICANT & CO-APPLICANT — PLEASE SIGN AND DATE THE CREDIT APPLICATION

HAS APPLICANT (CO-APPLICANT) EVER DECLARED BANKRUPTCY? YES ☐ NO ☐

HAS APPLICANT (CO-APPLICANT) EVER BEEN EXTENDED CREDIT THROUGH ANY BADCOCK STORE? YES ☐ NO ☐

IF YES, WHICH STORE? (city & state): _____

All of the information stated on this application is, to the best of your knowledge, complete and accurate. You agree that we may obtain a credit bureau report on you and we may verify any of the information provided on this application, including residency. By completing and signing this application, you request an account be established which will allow you to make purchases under this account. By signing, you agree to the terms and conditions of both the Credit Application and the Badcock Easy Purchase Plan Agreement Form LD22F REV 12-07FL (which includes an arbitration provision), which form is part of this combined Credit Application and the Badcock Easy Purchase Plan Agreement, and is incorporated herein by reference. You understand that if approved, you agree to the terms of the account and that you have read and received a copy of your agreement before making any purchases on this account. The terms are attached. If this is a joint credit application, you understand that each applicant has the right to use the account and both parties shall be jointly and severally liable for all purchases made under the account by any joint applicant. NOTICE TO BUYER: (a) Do not sign this before you read it or if it contains any blank spaces. (b) You are entitled to an exact copy of the paper you sign. (c) You have the right to pay in advance the full amount due. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. YOU HEREBY ACKNOWLEDGE RECEIPT OF A FULLY EXECUTED AND COMPLETE COPY OF THIS CONTRACT.

Signature of Applicant: Ida Mae Kelly    Date: 4-17-08

Signature of Co-Applicant: Martha Hill    Date: 4-17-08

Store Use only: ☐ Approved ☐ Declined   Credit Limit: ____   Account #: ____

Added M. Hill


Badcock&more.  Badcock

**EXHIBIT "A"**


## BADCOCK EASY PURCHASE PLAN CREDIT AGREEMENT

This Badcock Easy Purchase Plan Credit Agreement ("Agreement") governs your W. S. Badcock Corporation revolving account ("Account") for consumer credit purchases made at any Badcock Home Furnishing Center or Badcock Home Furniture & more store location. The words "you," "your" and "Accountholder" in this Agreement refer to each person who signs this Agreement and any person who is otherwise responsible for the Account. The words "we," "our" and "us" refer to W. S. Badcock Corporation, its successors and assigns. Our principal place of business is 200 N. Phosphate Boulevard, Mulberry, Florida 33860.

In consideration for us opening this Account in your name, you agree to the following:

1. **ACCEPTANCE OF ACCOUNT.** You will pay us as provided in this Agreement for all amounts owed on the Account for each purchase made by you, by any other Accountholder, or by any person who has your permission to use this Account, whether the purchase is made in person, or by telephone, internet or mail. If there are two or more Accountholders, the Account is a joint Account and each Accountholder is jointly and individually liable for all amounts owed under this Agreement and is bound by the terms of this Agreement. This Agreement supersedes any prior agreements you may have with us. You acknowledge that this Agreement provides you with the information the federal Truth-in-Lending Act requires before credit is extended and that this Agreement shall become effective when you receive your copy of the Agreement containing the required information and an authorized user on the Account uses the Account in a transaction in which we extend credit under the Account.

2. **DOWN PAYMENTS, MINIMUM MONTHLY PAYMENTS, LATE FEES.** At the time of each purchase, you will make a down payment in an amount that is at least 25% of the cash price, plus sales tax. From time to time, at our option, we may allow you to make purchases with a reduced or no down payment. You will pay us each month the minimum monthly payment (together with any past due payments) with respect to your Account; you may pay us a higher amount at any time. You will receive a statement from us each month showing your new balance and the minimum monthly payment. You must continue to pay the minimum payment due even if you notify us of a dispute on your Account unless the whole balance is in dispute. If you make a payment that is dishonored or returned unpaid for any reason, you authorize us to add to your Account an amount equal to the highest charge authorized by law for returned payment fees. If you fail to pay the minimum monthly payment within 10 days after the due date (30 days in NC, 15 days in MS), the following will be charged to your Account: $10.00 in AL, FL, MS, and TN; $25.00 in GA; the greater of $10.00 or 5% of your minimum monthly payment in KY; the lesser of $14.50 or 5% of your minimum monthly payment (but not less than $5.80) in SC (subject to any increases allowed by South Carolina law); the lesser of $10 or an amount not to exceed 5% of your minimum monthly payment in VA; 5% of your minimum monthly payment not to exceed $15 in WV; and $5.00 if your unpaid balance is less than $100 and $10.00 if your unpaid balance is $100 or more in NC.

3. **FINANCE CHARGES.** You will also pay us a FINANCE CHARGE each month. We will figure the FINANCE CHARGE by applying the monthly "periodic rate" described below to the "average daily balance" (including current transactions) of your Account: a periodic rate in NC of 1.5% (ANNUAL PERCENTAGE RATE of 18%); a periodic rate in FL of 1.992% (ANNUAL PERCENTAGE RATE of 23.9%) to the portion of the average daily balance of your Account which is $5000 or less and a periodic rate of 1.5% (ANNUAL PERCENTAGE RATE of 18%) to the portion of the average daily balance of your Account which is more than $5000 (This rate is authorized pursuant to Sections 516.031 and 687.12 of the Florida Statutes); a periodic rate in GA, MS, KY, and TN of 1.75% (ANNUAL PERCENTAGE RATE of 21%); a periodic rate in SC of 2.0% (ANNUAL PERCENTAGE RATE of 24%); a periodic rate in AL of 1.75% (ANNUAL PERCENTAGE RATE of 21%) to the portion of the average daily balance of your Account which is $750 or less and a periodic rate of 1.5% (ANNUAL PERCENTAGE RATE of 18%) to the portion of the average daily balance which is more than $750; a periodic rate in VA of 1.825% (ANNUAL PERCENTAGE RATE of 21.9%); and a periodic rate in WV of 1.5% (ANNUAL PERCENTAGE RATE of 18%) to the portion of the average daily balance of your Account which is $750 or less and a periodic rate of 1.0% (ANNUAL PERCENTAGE RATE of 12%) to the portion of the average daily balance which is more than $750. To get the "average daily balance" we take the beginning balance of your Account each day, add any new purchases and other transactions and subtract any payments or credits. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance." The minimum FINANCE CHARGE imposed in any month will be 50 cents (except in FL and KY, where there is no minimum charge). FINANCE CHARGES will be charged from the date of purchase (even if you pay your next bill in full). Notwithstanding the above, no FINANCE CHARGE will be imposed in any month in which there is no previous balance, and no additional FINANCE CHARGES will be imposed on your next monthly statement if you pay your balance in full within 18 days (25 days in NC and VA) after the closing date on your Account. Also notwithstanding the above, in MS no FINANCE CHARGE will be imposed for a new purchase if you pay in full, within one month after the closing date for the billing statement on which the purchase initially appears, the "new balance" shown on such billing statement. The closing date is the last day of each monthly cycle that payments and transactions will post to your Account for that cycle. We may offer and you may accept special purchase plans and the terms will be set forth at the time of your purchase. All other terms of this Agreement apply to special purchase plans. Your failure to meet those special purchase plan terms will reinstate all terms of this Agreement.

4. **OTHER CHARGES.** You also will pay us all other charges under your Account. These other charges include fees for delivery and setup, and charges for insurance that you voluntarily elect to purchase.

5. **BILLING ERRORS, REQUIRED NOTICE.** The delivery of your monthly statement or other notice to any Accountholder at the billing address then shown on our records will constitute delivery and notice to all Accountholders. You agree to provide us at least 10 days prior written notice of any change in your name, home address, billing address, or place of employment and if you have not already done so, you will note any such changes on the payment stub of your current monthly statement and return it to us. You have read the notice at the end of this Agreement regarding your rights and responsibilities with respect to billing errors. You agree to notify us promptly about possible errors or problems on your account. If you violate any terms of this Agreement, a negative report may be submitted to credit reporting agencies and entered on your credit record. If you believe we have reported inaccurate information regarding the account, you should follow the procedures described in the Billing Rights section at the end of this Agreement. All billing inquiries or notices should be sent to P.O. Box 1034, Mulberry, Florida 33860.

6. **ACCOUNT PURCHASES.** You will sign a sales slip at the time of each purchase in our store; and in case a purchase is made by telephone, internet or by mail, you will accept our sales slip showing such sale and our record of delivery of goods purchased as conclusive evidence (complete proof) of such sale and delivery. The fact there is no signature on a sales slip for the purchase of goods will not relieve you of your obligations under this Agreement. The monthly statement of your Account, indicating any purchases or payments, will be considered correct unless you tell us in writing of any possible mistake within 60 days after the first monthly statement which shows the possible mistake was mailed to your billing address. You consent to the use of secure electronic signature capture for storing and documenting any purchase you make on the Account. You may order items for delivery at a later date, but the amount of the order will be added to your Account at the time of purchase. Title to the merchandise you purchase will pass when you accept possession at our store location or when the merchandise is loaded onto a common carrier or our delivery truck if you choose our delivery service.

7. **SECURITY INTEREST.** You hereby grant us a purchase money security interest in each item of property purchased on the Account (unless a security interest is not permitted by law), except for any property that, when installed, will become a fixture. You and we intend that floor coverings and unit air conditioners will not be fixtures no matter how they are installed. Granting us a security interest means we keep an interest in the property until you pay us for it in full as explained in this Agreement. Such security interest will secure the total amount due from time to time on each item and will remain in such item until the total cash price has been paid in full. We will apply payments on your Account in the following order: first to the payment of finance charges in the order of their entry to the Account and then to the payment of other debts (including without limitation the unpaid purchase price of items, insurance charges, late fees, court costs, returned payment fees, delivery charges, and set-up or installation fees) in the order of their entry to the Account. If you purchase more than one item on the same date,

payments will be applied first to the payment of the smallest debt. You agree that the security interest will give both us and you all the rights and remedies granted by the Uniform Commercial Code as it applies from time to time in the state where this Agreement is signed.

**8. DEFAULTS, APPLICABLE LAW.** You will be in default of this Agreement and your Account upon the occurrence of any of the following: 1) If you do not pay all of any required minimum monthly payment when it is due; 2) if you die, are declared legally incompetent or file a petition for bankruptcy protection or other insolvency action; 3) if we determine that you have provided false or misleading information or signatures relating to this Account; 4) if you default on any other account or agreement you have with us; or 5) if you in any other way fail to meet your obligations under this Agreement, in each case as otherwise required by law. If you are in default, we may declare the entire balance of your Account immediately due and payable without notice, and, if you do not pay the balance, we may repossess and you will immediately surrender to our possession any and all property for which you have not fully paid and in which we still have a security interest. If your failure to meet our obligations under this Agreement results in our placing your Account with an attorney who is not a salaried employee of ours for replevin or other legal action, you will pay us reasonable fees for attorneys and all court and other costs related to such action, in each case to the fullest extent permitted by law, and such fees and costs will be added to your Account. In any proceeding to collect on your Account, we may use a photographic copy or electronic image of any sales slip or other document to establish the validity of any sale. You hereby consent to attachment, garnishment and/or other legal process of your wages and other earnings to the extent permitted by applicable state and federal laws (without limitation, the foregoing sentence is not applicable in South Carolina). Unless otherwise provided by this Agreement, this Agreement is governed by the internal laws of the state in which the store is located where you make your purchases pursuant to this Agreement.

**9. TERMINATION OR CHANGES TO AGREEMENT.** We or you (including any joint Accountholder acting alone) may terminate this Agreement at any time upon written notice to the other; provided, the termination of this Agreement by either party will in no way change your responsibility to pay the whole balance due on your Account under the terms of this Agreement, including purchases made but not yet billed, and to do everything else required by this Agreement until payment has been made in full. Once notice of termination has been given, no further purchases may be made under the Agreement. We may change this Agreement by mailing written notice of the change to the Account's billing address as then shown on our records. Except as otherwise prohibited by law or as otherwise provided in the notice, all changes will be effective 30 days after the date of mailing and will apply to all outstanding indebtedness as well as new transactions; provided, that you may reject the changes by providing us written notice (within 15 days of the date that the notice of the change was mailed to you) of your rejection mailed to us at the address in the Billing Rights section at the end of this Agreement. If you timely provide such written notice to us and make no further purchases on your Account, then the changes will not apply to your Account or to this Agreement; however, in such event, we may restrict or prohibit any additional purchases on your Account and/or terminate the Account. The failure to provide such notice on a timely basis or any further use of your Account (even if a notice rejecting the changes has been sent) will be considered an acceptance of all changes in terms. Your Account will be classified as inactive, and terminated, if there is no current balance and there has been no activity for a period of 36 months.

**10. ARBITRATION.** You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between us and you (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.

This provision does not affect the rights of either party to exercise any right to self-help repossession. We and you further understand and agree that arbitration will be required only in the event that the aggregate amount(s) at issue arising from all of the Claims between us exceeds $7,500 (including but not limited to the value of any property at issue, money, attorneys' fees, punitive damages, injunctive relief, declaratory relief, and any and all other Claims that we or you attempt to assert on behalf of ourselves or any others). You understand that if you attempt to assert any claim or controversy on behalf of a putative class of persons, the amount of the damages you seek shall be deemed to exceed $7,500. Other than in small claims or similar proceeding, if any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall be deemed to exceed $7,500.

**CLAIMS COVERED:** Claims subject to arbitration include, but are not limited to, any and all claims or controversies arising out of or related to any aspect of the relationship between us and you, including any claims by either party's agents, assigns, attorneys, employees, officers, insurers, or any other representatives. This arbitration clause applies to all transactions occurring before or after the execution of this Agreement.

**INITIATION OF ARBITRATION:** The party filing arbitration must choose one of the following three arbitration administrators: National Arbitration Forum; American Arbitration Association; or JAMS. All parties must follow their rules and procedures for initiating and pursuing arbitration. If you initiate the arbitration, you must also notify us in writing to the Arbitration Officer at P.O. Box 232 Mulberry, FL 33860. If we initiate the arbitration, we will notify you in writing at your then current billing address or (if your Account is closed) the last address at which we contacted you. Any arbitration hearing that you attend will be held at a place chosen by the arbitrator or arbitration administrator in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which we and you agree in writing. You may obtain copies of the current rules of each of the three arbitration administrators named above, and other related materials, including forms and instructions for initiating an arbitration, by contacting the arbitration administrators as follows: National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, Web site: www.arbitration-forum.com; American Arbitration Association, 335 Madison Avenue, Floor 10, New York, NY 10017-4805, Web site: www.adr.org; or JAMS, 1920 Main Street, Suite 300, Irvine, CA 92610, Web site: www.jamsadr.com.

**PROCEDURES AND LAW APPLICABLE IN ARBITRATION:** A single, neutral arbitrator will resolve Claims. The arbitrator will be selected in accordance with the rules of the arbitration administrator. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless this arbitration provision is inconsistent with those procedures and rules, in which case this Agreement will prevail. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect your customer account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of, any person who is not a party to the proceeding. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by us or you, the arbitrator will provide a brief statement of the reasons for the award.

**COSTS:** If we file the arbitration, we will pay the initial filing fee. If you file the arbitration, you will pay the initial filing fee unless you seek and qualify for a fee waiver under the applicable rules of the arbitration administrator. We will reimburse you for the initial filing fee if you paid it and you prevail. If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first day of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so, or you ask us and we determine there is good cause for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party.

**NO CONSOLIDATION OR JOINDER OF PARTIES:** All parties to the arbitration must be individually named. Claims by persons other than individually named parties shall not be raised or determined. Unless consented to by all parties to the arbitration, Claims of two or more persons may not be joined, consolidated or otherwise brought together in the same arbitration (unless those persons are applicants, co-applicants or authorized users on a single Account and/or related accounts or parties to single transaction or related transactions); this is so whether or not the Claims (or any interest in the Claims) may have been assigned. [This paragraph is not applicable in West Virginia.]

ENFORCEMENT, FINALITY, APPEALS: We or you may bring an action, including a summary or expedited motion, to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Failure or forbearance to enforce this arbitration provision at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between us and you regarding arbitration must be in writing. An award by the arbitrator after 15 days have passed shall be final and binding on the parties, subject to judicial review that may be permitted under the FAA. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, nor on the resolution of any other dispute or controversy.

SEVERABILITY, SURVIVAL: This arbitration provision shall survive: (i) termination or changes in this Agreement, your Account and the relationship between us and you concerning your Account; (ii) the bankruptcy of any party; and (iii) any transfer or assignment of your Account, or any amounts owed on your Account, to any other person. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

11. **NO WAIVER.** We may delay or choose not to enforce any right in this Agreement without losing or waiving that right, including, but not limited to, accepting late or partial payments. Any waiver of rights by us must be in writing and signed by our authorized representative.

12. **CREDIT LIMIT.** We will set a limit on the amount of credit we will give to you and we may increase, decrease, suspend or terminate this limit at any time without prior notice. You will be notified of your credit limit when the Account is opened and on each monthly statement. If you go over your established credit limit at any time, you will still be charged for all purchases made and the amount exceeding your credit limit will be immediately due and payable.

13. **AUTHORIZED USERS.** You understand you may grant permission in writing for certain persons to use your Account ("authorized users") under the terms of this Agreement, and you will be responsible for all charges made by any authorized user.

14. **UPDATED FINANCIAL INFORMATION.** Upon request, you will promptly give us accurate updated financial information about yourself.

15. **CREDIT INVESTIGATIONS AND REPORTING.** You agree that we may investigate your credit, employment and income records and verify your credit references, and that we also may report the status and payment history of your Account to credit reporting agencies, our affiliates, and dealers. You authorize us to provide information on you from your application and other sources to our affiliates, including but not limited to our dealers. We may inform our affiliates, including but not limited to our dealers, of the credit limit on your account. You authorize us to obtain a consumer report from consumer reporting agencies in considering your application, and for the purpose of an update, renewal, extension of credit, review or collection of your Account. If you ask whether or not a consumer report was requested, we will tell you and if we received a report, we will give you the name and address of the agency that furnished it. If you believe any information provided to a credit reporting agency is incorrect, you should notify us in writing at P.O. Box 1034, Mulberry, FL 33860, including the specific reason you believe there is a discrepancy.

16. **MONITORING PRACTICES.** You agree that our supervisory personnel may listen to and record telephone calls between our representatives and you in order to evaluate the quality of our service to you and other accountholders.

17. **ASSIGNMENT OF ACCOUNT.** We may sell, assign, or transfer your Account or any portion thereof without notice to you. You may not sell, assign, or transfer your Account.

18. **SEVERABILITY.** If any provision of this Agreement is determined to be void or unenforceable under any law, rule, or regulation, all other provisions of the Agreement will remain valid and enforceable.

## YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case Of Errors Or Questions About Your Bill.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper (not on the monthly statement or payment receipt) at W. S. Badcock Corporation, P.O. Box 1034, Mulberry, Florida 33860. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**Your Rights and Responsibilities After We Receive Your Written Notice.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

## W. S. BADCOCK CORPORATION PRIVACY POLICY

Keeping customer information secure is a top priority for all of us at Badcock. In order to help you understand what information we collect and how we use it, we have implemented this Privacy Policy. Unless we indicate otherwise, the term "information" in this Privacy Policy means information that specifically identifies you. This Privacy Policy applies to all current and former customers of Badcock.

**What Information Is Collected**
In the process of serving you, we become aware of certain "nonpublic personal information" – information about you that is not available publicly. This information comes to us from a variety of sources including:

- Information you provide directly to us on applications or otherwise (such as Social Security number, assets and income);
- Information related to your transactions with us, or others (such as your account balance, payment history, parties to transactions and account usage);
- Information we receive about your transactions with nonaffiliated third parties; and
- Information that we receive from a consumer reporting agency.

We protect personal information we collect about you by maintaining physical, electronic, and procedural safeguards that comply with applicable law and assist us in preventing unauthorized access to that information. We train people who work for us how to handle personal information and we restrict access to it.

**We Do Not Sell Any Information**
We do not permit list brokers, mail-order businesses, telemarketers, or other marketing companies to contact you to promote their products or services, and we do not sell, lend, or give out your information for this purpose. If you are a former customer, we maintain the confidentiality of your personal information as if you were still a customer.

**We Strive To Maintain the Accuracy Of Your Information**
We work to ensure that the information concerning you is accurate in all aspects. If we become aware of inaccuracies in our records, we will take prompt steps to make appropriate corrections.

**What Information We Disclose**
Federal law allows us to share information in certain circumstances:

- We may disclose information we collect, as described above, to companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements.
- We may share your information with companies that we hire to perform necessary account-servicing functions at our direction, to manage, service and maintain your account.

We also are permitted under law to disclose nonpublic personal information about you to "nonaffiliated third parties" in certain other circumstances. For example, we may disclose nonpublic personal information about you to third parties to assist us in processing your application with us, to government entities in response to subpoenas, and to credit reporting agencies.




LD22F REV 12-07 FL